BLACK, Judge.
In these consolidated appeals, State Farm Fire and Casualty Company, Leonor Rissotto Carvajal, and Sergio Carvajal, appellants here and defendants in a personal injury lawsuit below, raise three claims of error. First, they argue that the trial court abused its discretion in failing to order a new trial based upon the improper testimony of Karen Penland, appellee here and plaintiff below, and upon her counsel’s improper closing argument. State Farm and the Carvajals next argue that the trial court reversibly erred in failing to order a new trial or a remittitur because the jury award was not supported by the evidence. And finally, State Farm and the Carvajals contend that because the underlying judgment must be reversed, so must the cost judgment. Finding merit in the first claim on appeal, we reverse the final judgment and remand for a new trial. As a result, we also reverse the cost judgment. We do not reach the issue of whether the jury award was supported by the evidence.
I. Background
On February 2, 2009, Ms. Carvajal was the driver and co-owner of a vehicle that rear-ended a vehicle driven by Ms. Pen- *8 land. Following the accident, Ms. Penland sued Ms. Carvajal and Sergio Carvajal, Ms. Carvajal’s husband and co-owner of Ms. Carvajal’s vehicle, for personal injury-damages. State Farm, Ms. Penland’s uninsured motorist insurance carrier, was also sued. Ms. Penland claimed that as a result of the accident she suffered shoulder and neck injuries which required surgery and significant medical treatment. At the time of trial, only causation and damages were contested; liability was not an issue.
Prior to trial, State Farm filed a motion in limine seeking to preclude all evidence or argument pertaining to any failure of State Farm to comply with its contractual obligations to Ms. Penland. State Farm reiterated in the motion that this was not a breach of contract case and that the amount of insurance was not an issue. The parties agree that the motion in limine was granted; however, there is no written order and our record does not contain a hearing transcript.
Nevertheless, while giving her direct testimony at trial Ms. Penland stated: “I would never be here for any other reason but, you know, because I — I can’t believe that they’re not going to take care of this and be responsible. I paid my bills. I paid my insurance. It’s crazy.” And despite counsel’s attempt to redirect her, Ms. Penland continued: “I paid more. I had more. I had more coverage. And then they dropped me. Then I get dropped by them.”
State Farm and the Carvajals immediately objected to Ms. Penland’s comments. Once the jury had been removed from the courtroom, State Farm moved for a mistrial, arguing that a curative instruction would be inadequate to repair the harm done and that Ms. Penland’s testimony violated the court’s order on the motion in limine. The Carvajals joined the motion for mistrial, arguing that the testimony was extremely damaging and not relevant to the trial. The trial court sustained the objection but reserved ruling on the motion for mistrial. The court then called the jury back into the courtroom and instructed it to “Please disregard Ms. Penland’s last comment.”
State Farm and the Carvajals renewed the request for a mistrial prior to proceeding with testimony the next morning. Although the court acknowledged the inflammatory nature of Ms. Penland’s statements, the motion was denied.
The motion in limine and the appropriateness of comments regarding State Farm’s handling of the case were also addressed before closing arguments. The Carvajals’ counsel brought to the court’s attention that it would be prejudicial and inappropriate for Ms. Penland’s counsel to make a “bad insurance company argument” with comments like “State Farm didn’t do this or State Farm didn’t do that.” Counsel for Ms. Penland responded that while he would refer to State Farm in closing he would not argue that simply because Ms. Penland bought insurance she was entitled to automatic payment.
Despite the concern expressed prior to closing arguments, Ms. Penland’s counsel made numerous references about State Farm not accepting responsibility. The following are excerpts from counsel’s closing argument:
Karen Penland never imagined that she would be in this courtroom. She never imagined that she would be fighting this fight. She purchased uninsured motorist coverage so that if she was hit by someone like Ms. Carvajal she would be protected.
[[Image here]]
She owned her own home and car. She takes care of both of those things. *9 She works hard and has her whole life. She has taken jobs that allowed her to educate herself and move up in the chosen industry that she is working in now in sales. And she buys insurance to protect herself and others and now—
At this juncture, State Farm objected, arguing that Ms. Penland’s counsel’s statements were improper contract-based arguments. The objection was overruled, and Ms. Penland’s counsel continued:
And now she’s in this courtroom where State Farm is required to pay for the damages that were caused by Ms. Carvajal’s negligence and yet they still will not own up to the responsibility that they have to pay for those damages.
State Farm again objected and the objection was overruled. Counsel continued:
They come into this courtroom and they said in opening statement we accept responsibility for this crash, but they have turned — they have turned their own insured who is nothing but an innocent victim in this whole crash and this whole matter and they join with Ms. Carvajal’s attorney in an effort to make Karen Penland out as an unsavory or untrustworthy character.
At this point, counsel for the Carvajals objected, arguing that Ms. Penland’s counsel’s comments were improper and inflammatory. He requested a curative instruction and moved for a mistrial. The objection was sustained; however, the request for an instruction and the motion for mistrial were denied. Ms. Penland’s counsel continued with his argument, using his previous approach:
So instead of accepting responsibility what they do is they put Karen Pen-land’s life under a microscope in order to find anything they can to minimize or even eliminate their responsibility to her.... They’re looking for anything they can to minimize their exposure for the damages that were caused by this crash.
Similar statements regarding State Farm’s alleged failure to take responsibility and criticizing State Farm’s handling of the case permeated counsel’s closing argument. Neither State Farm nor the Carva-jals objected to these continuing comments.
At the conclusion of the trial, the jury returned a total verdict of $1,777,309.59. The trial court entered a final judgment in favor of Ms. Penland in accordance with the verdict. State Farm and the Carvajals subsequently moved for a new trial, arguing in part that the verdict was contrary to the manifest weight of the evidence and that the trial court erred in denying the motions for mistrial based upon Ms. Pen-land’s inflammatory testimony and Ms. Penland’s counsel’s inflammatory and improper argument. Those motions were denied.
II. Analysis
Statements by counsel during closing argument may provide the basis upon which to grant a motion for new trial. Carnival Corp. v. Jimenez, 112 So.Sd 513 (Fla. 2d DCA Feb.27, 2013) (citing Mercury Ins. Co. of Fla. v. Moreta, 957 So.2d 1242, 1250 (Fla. 2d DCA 2007)). Provided the improper argument has been properly preserved, “the trial court should grant a new trial if the argument was ‘so highly prejudicial and inflammatory that it denied the [objecting] party its right to a fair trial.’ ” Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1271 (Fla.2006) (quoting Tanner v. Beck, 907 So.2d 1190, 1196 (Fla. 3d DCA 2005)). Similarly, properly preserved improper witness testimony which is highly prejudicial and inflammatory warrants a new trial, particularly where the damaging testimony is compounded by improper argument.
*10 The trial court abused its discretion in denying the motions for new trial. See Engle, 945 So.2d at 1271. Ms. Penland’s counsel’s argument that State Farm was shirking its responsibilities or otherwise acting in bad faith shifted the focus from injuries and damages to claims handling and bad faith, neither of which were issues at trial. State Farm and the Carvajals were denied a fair trial as a result.
This court and others have repeatedly stated that arguments all but identical to those made by Ms. Penland’s counsel are improper, inflammatory, and mandate reversal for a new trial. See, e.g., State Farm Mut. Auto. Ins. Co. v. Thorne, 110 So.3d 66, 74-75 (Fla. 2d DCA 2013); Moreta, 957 So.2d at 1251; Intramed, Inc. v. Guider, 93 So.3d 503, 507 (Fla. 4th DCA 2012); State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377, 380 (Fla. 3d DCA 2005). Counsel’s contention that State Farm was refusing to “own up to the responsibility that they have [sic]” not only improperly shifted the focus of the case but also “ ‘improperly suggested that [State Farm] should be punished for contesting damages at trial and that its defense of the claim in court was improper.’ ” Thorne, 110 So.3d at 75 (quoting Intramed, 93 So.3d at 507); accord Moreta, 957 So.2d at 1251-52; Revuelta, 901 So.2d at 380. The closing argument was not intended to encourage a “logical analysis of the evidence in light of the applicable law”; rather it was designed to inflame the jurors’ emotions. See Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1028 (Fla.2000); Intramed, 93 So.3d at 507.
Ms. Penland argues that State Farm and the Carvajals’ claim that the trial court erred in failing to grant a new trial is based upon unobjeeted-to closing argument which was not argued in the motions for new trial and therefore should not be considered by this court. To the extent State Farm and the Carvajals rely on such statements, we agree with Ms. Penland that those claims have not been properly preserved for appeal. See Murphy, 766 So.2d at 1027; USAA Cas. Ins. Co. v. Howell, 901 So.2d 876, 879 (Fla. 4th DCA 2005); see also Santiago v. Abramovitz, 96 So.3d 1091, 1093 (Fla. 4th DCA 2012) (“As for the closing argument, when the defendant made the allegedly inflammatory argument, the plaintiff did not object. The plaintiff also did not raise this challenge in her motion for new trial. Thus, the plaintiffs challenge to the defendant’s closing argument is unpreserved.”). However, we conclude that the improper statements in closing argument which were properly preserved warrant a new a trial. Therefore, we do not consider the unobjected-to statements and need not apply the test outlined in Murphy. See 766 So.2d at 1031.
Ms. Penland’s counsel’s argument is not the sole basis upon which a new trial should have been granted. In her direct testimony, Ms. Penland stated that despite paying her premiums State Farm “dropped” her coverage. At oral argument before this court, Ms. Penland’s appellate counsel admirably conceded that there was no way for the trial court to adequately address Ms. Penland’s damaging statement without further emphasizing the prejudicial testimony. Ms. Penland’s statement was egregious and prejudicial; the court’s instruction to disregard Ms. Penland’s last statement could have no curative value in this case. State Farm’s contractual obligations to Ms. Penland were irrelevant to a determination of causation and damages. See Revuelta, 901 So.2d at 379-80 (“The issue here was driver negligence, not bad faith....”); Wittmer v. Jones, 864 S.W.2d 885, 891 (Ky.1993) (concluding that bifurcating trial on liability and bad faith claims “keeps out of the first trial evidence which was relevant to the issue of bad faith but unnecessary and possibly prejudicial ... in the trial of *11 the preliminary question of liability.” (internal quotation marks omitted)). And the implication of bad faith should not form any part of the basis for a liability determination. See Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla.1991) (“[A]n insured’s underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith ... can accrue.”). Moreover, while Ms. Penland’s testimony was described by the parties as emotional, the objectionable statements were an inappropriate plea to the jurors’ sympathies. See Hollenbeck v. Hooks, 993 So.2d 50, 51 (Fla. 1st DCA 2008); see also Fla. Std. Jury Instr. (Civ.) 7.1 (“In reaching your verdict, do not let bias, sympathy, prejudice, public opinion, or any other sentiment for or against any party to influence your decision. Your verdict must be based on the evidence that has been received and the law on which I have instructed you.”). State Farm’s motion for mistrial should have been granted. See Fla. Power & Light Co. v. Jennings, 518 So.2d 895, 899 (Fla.1987); First Nat’l Bank of Fla. v. Braun, 474 So.2d 386, 387 (Fla. 2d DCA 1985). The trial court had an opportunity to correct this error by granting the motions for new trial; it failed to do so.
Independently and cumulatively, the effect of Ms. Penland’s testimony and her counsel’s improper closing argument denied State Farm and the Carvajals a fair trial. Accordingly, we reverse the final judgment and cost judgment and remand for a new trial on causation and damages.
Reversed and remanded.
WALLACE and SLEET, JJ., Concur.